UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CION CASTILLE WARNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-2981** |
| **SUSAN A. HUTSON AND RYAN ANDREWS** | **SECTION "L" (5)** |

## ORDER AND REASONS

Pending before the Court is a Motion to Dismiss for Failure to State a Claim by Defendants Susan A. Hutson and Ryan Andrews ("Hutson" and "Andrews," or, collectively, "Defendants"). R. Doc. 7. Plaintiff Cion Warner ("Warner") opposes the motion, R. Doc. 8, and Defendants have filed a reply, R. Doc. 12. Having considered the briefing and the applicable law, the Court rules as follows.

### I.  BACKGROUND

This action arises from the Defendants' alleged firing of Plaintiff Cion Warner after she was absent for several weeks due to emergency surgery and hospitalization required to protect herself and her newborn child. R. Doc. 1-2 at 10. Warner filed suit against Defendant Susan A. Hutson, a resident of Louisiana, in her official capacity as Sheriff for the Parish of Orleans and Defendant Ryan J. Andrews, a resident of Louisiana, individually and as Director of Compliance-Labor & Employment Orleans Parish Sheriff's Office. *Id.* at 9.

On or about April 26, 2019, Warner was previously employed by the Orleans Parish Sheriff's Office ("OPSO") under the Marlin Gusman Administration. *Id.* On or about May 2022, OPSO hired Warner to the position of Human Resources Benefits Coordinator. *Id.* On or about June 30, 2022, Warner was admitted to a hospital for severe stomach pains and was informed that she would need to undergo emergency surgery to protect her and her unborn child. *Id.* at 10. On

1

that same date, Warner's husband contacted Warner's immediate supervisor at OPSO, Human Resources Director Danielle Weadd, and informed her of Warner's health emergency and requested medical leave on her behalf. *Id.* When Warner was released from the hospital, she personally informed Weadd of her emergency procedures and that additional medical leave was necessary until her physician deemed otherwise. *Id.* Warner's physician rescheduled her follow-up appointment from August 8 to August 11, 2022 and Warner informed Weadd of this change. *Id.* At the August 11th appointment, Warner's physician cleared Warner to return to work on August 15, 2022. *Id.* One day later, on August 12, Defendant Andrews emailed Warner that she was terminated from her position. *Id.*

In his email, Andrews stated that (1) OPSO received a document from Warner's health care provider in support of her requests for medical benefits; (2) a medical certificate dated July 11, 2022 which stated Warner would not be able to return to work until her physician re-evaluated her at a follow-up visit; and (3) As of August 12, 2022, OPSO received no updated communications on Warner's follow-up visit or return to work date, "which is considered unauthorized leave and voluntary termination." *Id.* at 11. Upon receiving this email, Warner contacted her supervisor Weadd who informed her that she was unaware that Warner was terminated. *Id.* Warner then delivered medical items and documents—which Andrews requested— to OPSO for processing. *Id.* On August 15, 2022, Weadd informed Warner that because she did not communicate with Andrews, "defendants were not going to overturn their decision to terminate her." *Id.*

Warner alleges that the sole cause of her termination was defendants' intentional creation of a hostile, disparate and discriminatory work environment, breach of duties, negligence, and other acts of discrimination. *Id.* at 12. Warner alleges that defendants violated various written

2

OPSO policies, and Louisiana and federal laws, including but not limited to, La. Const. Art., § 3, La. R.S. 23:332(A), La. R.S. 23:342, et seq., Title VII, 42 U.S.C. § 2000e, et seq., La. C.C. arts. 2315, 2316, 2317, 2320, the Family and Medical Leave Act ("FMLA"). *Id.* at 12-13. Accordingly, Warner prays for damages in the form of past, present, and future (1) loss of income, (2) loss of reputation in the community, (3) mental anguish, (4) embarrassment and humiliation, (5) attorney's fees, (6) damages under Louisiana Employment Discrimination Law ("LEDL"), Title VII of the Civil Rights Act of 1964, and FMLA. *Id.* at 13.

On August 29, 2023, Defendants Hutson and Andrews filed the instant motion. R. Doc. 7.

**II.   PRESENT MOTION**

In their 12(b)(6) Motion for Failure to State a Claim, Defendant Hutson requests that all but Warner's Title VII and LEDL sex discrimination claims be dismissed as to her, and Defendant Andrews requests that all the claims brought against him be dismissed because he was not Warner's "employer" under Title VII or the LEDL. R. Doc. 7 at 1, 10. Defendants argue that Warner's FMLA claims should be dismissed because Warner is not an "eligible employee" under the FMLA. *Id.* at 4-5. Defendants argue that Warner's Title VII and LEDL claims for discrimination based on race and color should be dismissed for failure to exhaust administrative remedies. *Id.* at 6. Defendants further argue that Warner failed to state a claim for hostile work environment under Title VII or the LEDL because she did not allege any harassing behavior in her Petition for Damages ("Petition"). *Id.* at 8. Defendants also argue that Warner's negligence claims are barred by the Louisiana Workers' Compensation statute. *Id.* at 11-12. Defendants argue that Warner fails to state an equal protection claim under the Louisiana Constitution because she does not indicate any law that she is challenging, but rather, that she was treated differently. Id. at 13.

Lastly, Defendants argue that Warner fails to state a claim for a violation of OPSO policies because violations of internal policies are not cognizable claims for which relief can be granted. *Id.* at 14.

In opposition, Warner does not dispute that she was not an "eligible employee" under the FMLA. R. Doc. 8 at 4. Regarding her Title VII and LEDL claims based on race and color, Warner argues that she asserted actionable claims in her EEOC charge and is entitled to allege claims that are reasonably expected to grow out of that charge; however, she also argues that she "did not file a claim in her lawsuit based on race or color." *Id.* at 7. Warner further argues that Defendant Andrews created a hostile environment and subjected her to disparate treatment because she was female and pregnant. *Id.* Regarding Warner's equal protection claim, she argues that La. Civ. Code. Art. 2727 "is unconstitutional as applied in this case." *Id.* at 12. Warner also argues that Defendant Andrews' actions amounted to a "continuous tort to persuade her to voluntarily resign" which is not barred under the Louisiana Worker's Compensation Statutes. *Id.* at 12-13. Accordingly, Warner prays that the Court dismiss Defendants' motion or alternatively, allow the Warner to amend her complaint. *Id.* at 15.

In their reply, Defendants argue that it is outside the scope of this motion for the Court to consider factual allegations outside Warner's Petition. R. Doc. 11. at 2. Defendants argue that (1) Warner's FMLA claims, Title VII and LEDL claims against (2) Defendant Andrews and (3) those based on race, and (4) claims for violations of internal OPSO policies should be dismissed because Warner did not oppose any of their arguments in her reply memorandum. *Id.* at 3, 4, 7. Defendants further argue that Warner "conflate[s] alleged discriminatory behavior with harassing behavior" in her Title VII and LEDL claims for hostile work environment and disparate treatment. *Id.* at 4. Defendants also argue that Warner's tort claims should be dismissed because of Louisiana laws which state that employment discrimination claims cannot be asserted under general Louisiana

4

Civil Code articles. *Id.* at 5; *See Lefkowitz v. Adm'rs of Tulane Educ. Fund*, 21-1578, 2022 WL 376148, at *1, *6 (E.D. La. Feb. 8, 2022). Lastly, Defendants argue that Warner's equal protection claim should be dismissed because Warner's citation to La. Civ. Code. art. 2727 is neither mentioned in her Petition nor relevant to the case at hand as it discusses the termination of a lease with an indeterminate term. *Id.* at 6-7. Accordingly, Defendant Hutson prays that all but Warner's Title VII and LEDL discrimination claims as to sex be dismissed and Defendant Andrews prays that all claims brought against him be dismissed. *Id.* at 7.

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).


## IV. DISCUSSION

In their motion, Defendants argued that several of the Warner's claims should be dismissed. R. Doc. 7. The Court will address each group of claims in turn.

As a preliminary matter, Warner raised new allegations in her opposition motion and attached a statement of facts. R. Doc. 8; R. Doc. 8-1. For instance, Warner alleges that she made a claim against the Defendants for intentional infliction of emotional distress in her complaint. R. Doc. 8 at 6. However, there are no references to this claim in her Petition. R. Doc. 1-2. Courts are limited to the "four corners of the complaint" when reviewing a motion to dismiss. *D.H. Griffin Wrecking Co. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 720 (E.D. La. 2020); *see also Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 283 (5th Cir. 2023) ("In its review of a motion to dismiss, the district court is limited to the contents of the pleadings, including attachments thereto.") Accordingly, the Court will not consider the claim for intentional infliction of emotional distress, or any other new allegations made in these documents to the extent that they differ from the Warner's Petition.

### a. FMLA Claims

To bring a claim under the FMLA, the Defendants argue that Warner must first be an "eligible employee." R. Doc. 7 at 4. The FMLA provides that eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period" for a qualifying medical reason. 29 U.S.C. § 2612. It also defines an "eligible employee" as "an employee who has been employed— (i) for at least 12 months by the employer. . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). In the instant matter, OPSO hired Warner in May 2022 and she requested leave on or about June 30, 2022. R. Doc 1-1 at 9-10. Because Warner had not been employed by OPSO "for at least 12 months," Warner is not

an "eligible employee" under the FMLA and is thus not entitled to the protections of the statute. In her response, Warner does not oppose this argument. R. Doc 8. Accordingly, the Court dismisses Warner's FMLA claims against both Defendant Hutson and Defendant Andrews.

### b. Title VII and LEDL Claims against Defendant Andrews

Defendants argue that Warner's Title VII claims against Andrews should be dismissed because "such claims are not cognizable against an individual." R. Doc. 7 at 10. The Fifth Circuit has clearly expressed that "[o]nly 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of "employers," can be liable under Title VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *see also Massey v. Willard*, No. 22-3924, 2023 WL 5034643 at *1, *3 (E.D.La. Aug. 8, 2023) ("[T]he Fifth Circuit has explicitly stated that relief under Title VII is available only against an employer, not an individual supervisor or fellow employee.") (internal citations omitted). Title VII defines "employer" as an individual "engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). Andrews is an employee of Defendant Hutson and does not have fifteen or more employees of his own. Further, Warner does not oppose Defendants' arguments in her reply memorandum. R. Doc. 8. Accordingly, the Court dismisses Warner's Title VII claims against Defendant Andrews.

Similarly, Defendants argue that Warner's LEDL claims against Andrews should be dismissed because he was not the Warner's employer. Salient parts of the LEDL define "employer" as an individual who "receiv[es] services from an employee and, in return, giving compensation of any kind to an employee." Further, employers under the LEDL must have twenty or more employees. La. Rev. Stat. §23:302(2).[1] Warner never alleges that Andrews paid her wages or had employees. Accordingly, the Court dismisses Warner's LEDL claims against Defendant Andrews.

---

[1] In relevant part, La. Rev. Stat. 23:302 defines employer as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an

### c. Race- and Color-Based Title VII and LEDL Claims

Defendants argue that Warner's Title VII and LEDL claims based on race and color should be dismissed because she failed to allege such discrimination in her EEOC Charge of Discrimination. R. Doc. 7 at 6-8. Accordingly, Defendants argue that Warner did not exhaust administrative remedies with regards to those claims. *Id.* In response, Warner argues that she "timely sued" the defendants and that she "did not file a claim in her lawsuit based on race or color." R. Doc. 8 at 6-7. Given Warner's lack of opposition, the Court dismisses Warner's Title VII and LEDL claims based on race and color against the Defendants.

### d. Claims for Violations of Internal OPSO Policies

Defendants argue that Warner's claims for violations of internal OPSO policies should be dismissed because they are not cognizable claims. R. Doc. 7 at 14. Louisiana law is well-established on this issue. It provides that "employee manuals, as well as company policies and procedures, do not confer contractual rights upon employees nor create any exceptions to the employment at-will doctrine." *Blakemore v. Town of Grambling*, 20-53135 (La. App. 2 Cir. 1/15/20), 289 So. 3d 681, 687 ("Internal personnel policies do not create contractual rights between parties."); *see generally Square v. Hampton*, 2013-1680 (La. App. 4 Cir. 6/4/14), 144 So. 3d 88. Warner does not present any arguments in opposition. Accordingly, Warner's claims that Defendants Andrews and Hutson violated internal OPSO policies are dismissed.

### e. Warner's Equal Protection Claim under the Louisiana Constitution

Defendants argue that Warner's equal protection claim should be dismissed because she has not "identif[ied] any law that she is challenging" and is instead "arguing that she was merely

---

employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."

treated differently 'because of her sex, culture, political ideas or affiliation.'" R. Doc. 7 at 13; R. Doc 1-1 at 12. In opposition, Warner argues that Article 3 of the Louisiana Constitution is "silent on whether statutes such as La. Civ. Code. art. 2727 [sic] can be judged as violating Section 3 as applied based on the facts in each complaint." R. Doc. 7 at 12 (emphasis omitted). Mistakenly, Warner claims that under La. Civ. Code. art. 2727: "a person can discriminate against someone based solely on that person's sex by simply firing her as an at will employee without revealing the bias against a woman was in fact the cause for her termination." *Id.* (emphasis omitted).

Warner's arguments are unavailing. First, Warner fails to raise a claim under La. Civ. Code. art. 2727 in her Petition. Second, La. Civ. Code. art. 2727 concerns the termination of a lease with an indeterminate term, which is irrelevant to the matter at hand.[2] Because Warner has failed to state a plausible equal protection claim for relief under the Louisiana Constitution, the Court dismisses any constitutional claim against the Defendants. *Iqbal*, 556 U.S. at 678.

### f. Title VII and LEDL Claims for Hostile Work Environment and Disparate Treatment

Defendants argue that Warner's claims under Title VII and LEDL for hostile work environment and disparate treatment should be dismissed because Warner failed to allege any facts that support this contention. R. Doc. 7 at 8.

To state a hostile work environment claim under Title VII, the plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected character; (4) the harassment affected a term, condition, or privilege of employment, and (5) the plaintiff's employer knew or should have known of the

---

[2] La. Civ. Code. art. 2727 states "A lease with an indeterminate term, including a reconducted lease or a lease whose term has been established through Article 2680, terminates by notice to that effect given to the other party by the party desiring to terminate the lease, as provided in the following Articles."

9

harassment and failed to take prompt remedial action. *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). The Supreme Court emphasizes that violations of Title VII occur when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 65, 67 (1986)). For conduct to be "sufficiently severe or pervasive" it must be both objectively and subjective offensive. *Baderow v. REJ Properties, Inc.*, 974 F.3d 610, 617-18 (5th Cir. 2020). To determine if an employee's work environment was objectively offensive, "courts will consider the totality of circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *WC&M Enters., Inc*, 496 F.3d at 399.

In her Petition, Warner bases her hostile work environment claim on Andrews' firing of her, though she was compliant with internal OPSO policies. R. Doc. 1-2 at 9-11. She claims that she is part of a protected class as a pregnant female. *Id.* Warner further claims that she timely notified her direct supervisor, Weadd, of her requests for medical leave, when her doctor rescheduled her appointment, and when her doctor cleared her to return to work again. *Id.* However, Warner alleges that without any notification to Weadd or herself, Andrews terminated her employment because Warner "did not update OPSO regarding her follow-up visit or return to work date." *Id.*

Though Warner's claims may be subjectively offense, the Court finds that this incident was not objectively offensive. As a threshold matter, Warner's termination was a result of her alleged actions outside the workplace. Further, she fails to assert a claim that demonstrates the frequency

10

of Andrews' behavior, nor has she asserted a claim that Andrews "physically threaten[ed] or humiliate[ed]" her. *WC&M Enters., Inc*, 496 F.3d at 399. Considering the totality of circumstances, Andrews' actions, though dubious, did not rise to the level of objectively offensive harassment. Without more, Warner's claims cannot survive. Thus, The Court dismisses Warner's claims for hostile work environment under Title VII and the LEDL.

    g.  **Louisiana Tort Claims**

Defendants argue that all five of Warner's state tort claims should be dismissed because they are barred by the Louisiana Workers' Compensation Statute. R. Doc. 7 at 12. In her complaint, Warner alleges four negligence claims under La. Civ. Code. arts. 2315, 2316 2317, and 2320 and a claim for failure to supervise Andrews to prevent a hostile work environment. *Id.* In opposition, Warner argues that her tort claims are not barred by the Louisiana Worker's Compensation Statute because Andrews' conduct was intentional. R. Doc. 8 at 12-13. The Court is unpersuaded by Warner's argument.

Louisiana and federal laws are clearly established on this issue. In Louisiana, "when two statutes conflict, the 'statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.'" *Lefkowitz*, 21-1578, 2022 WL 376148 at \*5; *see also Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 380 (5th Cir. 2018). As developed by the Louisiana legislature, the LEDL is the appropriate statutory scheme to address employment discrimination allegations. Pursuant to the LEDL, employees have causes of actions against their employers, employment agencies, and labor organizations. Further, the LEDL specifies the available remedies in employment discrimination lawsuits. La. Rev. Stat. 23:303(A). Because the LEDL is "specifically directed to" Warner's tort claims, it is the more apt statute for Warner to raise her claims under. *Lefkowitz*, 21-1578, 2022 WL 376148 at \*5. Accordingly, the Court

dismisses Warner's tort claims under La. Civ. Code arts. 2315, 2316, 2317, 2320 and her failure to supervise claim against the Defendants.

## V. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim, R. Doc. 7, be **GRANTED**. Further, this Order does not impact Plaintiff's remaining claims against Defendant Hutson.

New Orleans, Louisiana, this 17th day of October, 2023.

_____
United States District Judge